UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ELLEN ROSEN,

|  |  |
|---|---|
| Plaintiff, | COMPLAINT |
| - against - | PLAINTIFF DEMANDS A TRIAL BY JURY |
| THE RAMAZ SCHOOL, |  |
| Defendant. |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Plaintiff Ellen Rosen ("plaintiff" or "Rosen") through her attorneys, Vladeck, Raskin & Clark, P.C., complains of defendant The Ramaz School ("defendant" or "Ramaz") as follows:

## NATURE OF ACTION

1.     Plaintiff brings this action to remedy discrimination on the basis of age and retaliation for opposition to unlawful employment practices in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the New York State Human Rights Law, Executive Law § 296 et seq. (the "Executive Law"); and the Administrative Code of New York § 8-101 et seq. (the "City Law").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over plaintiff's ADEA claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).  The Court has supplemental jurisdiction over the Executive Law and City Law those claims under 28 U.S.C. § 1367.

3.     Venue is proper within this district pursuant to 28 U.S.C. § 1391, because defendant Ramaz regularly does business within this district, and because a substantial part of the

1

760377 v1

events or omissions giving rise to plaintiff's claims occurred within the Southern District of New York.

4.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against defendant on April 23, 2015 complaining of the acts of discrimination and retaliation alleged herein.  On March 29, 2016, upon plaintiff's request, the EEOC issued plaintiff a notice of right to sue.  Plaintiff has complied fully with the administrative prerequisites of the ADEA.

5.    Pursuant to § 8-502(c) of the City Law, plaintiff is serving a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

## PARTIES

6.    Plaintiff is a 74 year-old woman who worked for Ramaz from 1979 until the involuntary termination of her employment in July 2014.

7.    Defendant Ramaz is a private school located in New York City.  It is an employer within the meaning of the ADEA, the Executive Law and the City Law.

## FACTUAL ALLEGATIONS

8.    Rosen was born in 1942 and is 73 years old.

9.    Rosen worked for Ramaz from September 1979 until her employment was terminated in July 2014.

10.    Rosen has a Bachelor of Science in Art and Art Education and a Master of Arts in Art, both from New York University.  She had ten years of experience teaching art prior to being hired by Ramaz.

2

760377 v1

11. In Rosen's first few years at Ramaz, she was the art teacher in the Upper School (the high school and junior high). For the last 32 years of her employment, she was also the Chair of the Art department.

12. Over the course of 35 years with Ramaz, Rosen reported to the following administrators: (1) Ruth Ritterband, Headmistress, and Rabbi Joshua Bakst, Dean; (2) Ira Miller ("Miller"), Headmaster of the Upper School, and Rabbi Bakst, Dean; (3) Rabbi Eli Rubin, Dean; and (4) Miller, Dean, and Rabbi Jay Goldmintz, Assistant Dean. The last two years of Rosen's employment, Miller reported to Head of School, Paul Shaviv ("Shaviv"). Prior to Shaviv, Judith Fagin ("Fagin") was the Head of School for at least five years.

13. In 2008, Ramaz was having financial difficulties. In trying to address the problem, Ramaz cut the salary of any teacher who was teaching fewer than 24 credits. That year Rosen was teaching 22 credits, although in other years she taught 25 to 28 credits. Her salary was cut $8,000. The following year Rosen taught 24 credits, but her salary was not restored.

14. In 2013 Rosen discovered that, while she received a $3,000 stipend for being Chair throughout her time in the position, other Chairs either had the number of classes they taught reduced or received a stipend of $10,000. Rosen was the oldest Chair. The next oldest Chair, Dr. Zehava Slonim, retired in 2013.

15. Throughout the time that Rosen reported to Miller, she observed that he treated women in an abusive fashion that she did not observe when he interacted with men.

16. In spring 2012, Miller repeatedly criticized Rosen unfairly. Miller called her into one meeting in which he yelled at her, was abusive, and threatened her.

3

17.    On June 12, 2012, Rosen sent a letter to Fagin requesting a meeting to discuss the hostile work environment that Miller created.  Rosen noted that she had consulted with an attorney, as she felt she had no choice.

18.    Fagin and Rosen met alone on or about June 21, 2012.  During the meeting Rosen said that Miller treated women badly.  Rosen also said that she did not feel safe around Miller.

19.    In the 2012-13 school year, the year Shaviv replaced Fagin, Rosen did not have any issues with school administrators.

20.    In the summer of 2013, Rosen wrote to Shaviv about rehiring a woman into the Art Department and about restoring the pay that was previously cut from Rosen's salary. During their subsequent conversation, Shaviv asked Rosen why she was still teaching.  Rosen replied, "Because I love it."  Shaviv made a number of comments attempting to convince Rosen to retire, such as saying that she should retire while she could still enjoy it, and that Ramaz had money to send teachers on trips when they retired, but that the money would not be available in the future.

21.    In August 2013, Rosen wrote to Shaviv asking to meet again to discus her compensation.  They met sometime in the fall.  Shaviv said Ramaz could not afford to restore Rosen's salary.

22.    Upon information and belief, in the fall of 2013, Rabbi Maier Moskowitz was pushed into retirement.  At that time, he was the only person at the Upper School over 70 other than Rosen.

23.    On April 3, 2014, Rosen was called into a meeting with Shaviv and Rabbi Schlomo Stochel, Assistant Dean, who reported to Miller.  Rabbi Stochel took notes during the

4

meeting. Shaviv said he had a letter of complaint from a parent. He showed Rosen the text of the letter with the names and the email of hers that it quoted redacted. The letter was dated February 9, 2014. As soon as Rosen read it she told Shaviv she knew who wrote it. Rosen, in accordance with school policy, had sent an email to the student's parents warning that the student would fail the class if she did not finish her project. In the letter Rosen was shown, the parent claimed it was "cruel" for Rosen to have given the student two days to finish her overdue project during finals. The parent blamed the student's poor performance on another final on the email Rosen had sent to the parents.

24. In the April 3, 2014 meeting, Rosen said that she had written to the parents because she had been instructed by Ramaz to write to the parents of any child in danger of failing. Shaviv said that Rosen's annual renewal contract from spring 2012 said that she would be fired if she engaged in any "inappropriate conduct," and that this constituted "inappropriate" conduct. Rosen was never given a contract that contained this language. When Rosen later went to the administrative office to look at her file, only the first page of the 2012-13 contract was there; there was no page with the language to which Shaviv referred and no signature page.

25. In the April 3, 2014 meeting, Shaviv asked how much longer Rosen planned to teach before retiring. Rosen said she did not know, maybe another four to five years. Shaviv said, "Oh no, that's way too long." He said that one to two years more was the "maximum" that would be "acceptable." He offered Rosen two options, one for her employment to end at the end of the 2013-14 school year with a payment, the other to stay a little longer, but promising in writing to retire within two years or less. Both offers would require Rosen to release any claims against the school. Shaviv said if Rosen did not accept, any further

5

"infraction" would lead to her firing without any compensation.   Rosen said she felt blindsided. Shaviv said to think it over and get back to him the next week.

26.    After the meeting, Rosen asked Rabbi Stochel if she could have a copy of his notes.  He said that he had sent a copy to Shaviv and destroyed the originals because it was so upsetting.   Rosen then asked Shaviv for the notes; he refused.   Shaviv sent Rosen a letter summarizing his view of the meeting and the options available to her.

27.    On or about April 29, 2014, Rosen responded to Shaviv that she had not done anything "inappropriate" and that she intended to continue teaching.  Rosen also said that she thought Shaviv was trying to force her out of Ramaz because of her age.

28.    On or about May 14, 2014, Rosen met with Shaviv, Dr. Roberta Solar ("Solar"), Assistant Head of School, and a faculty council representative whom Rosen brought. Rosen advocated for allowing her to stay at the school  Shaviv made two new proposals, which, like the last ones, were either an immediate retirement or phased retirement in the coming two years.  He put the proposals in writing on May 16, 2014.

29.    On or about May 20, 2014, Rosen replied that she did not want to retire. She repeated that she had not done anything "inappropriate" and that she thought Shaviv was using the parent's letter as pretext to push her out.  Rosen said this was not about the money, and suggested they put this issue aside and resume their discussions in the fall.

30.    In June, Shaviv sent out a mass email reminding faculty to return their annual reappointment contracts.  Rosen had not received one.

31.    On June 26, 2014, Rosen met with Shaviv again in the presence of Solar. Solar took notes.  Rosen believed the purpose of this meeting was to reach an agreement about her continued employment.  That did not happen.  At one point, Shaviv mentioned in passing

760377 v1

something about Rosen working another two years and them revisiting the issue at that point. On June 30, 2014, Rosen wrote to Shaviv that working for two more years and then discussing next steps would be acceptable to her. He did not reply.

32.    In mid-July 2014 Rosen received by Federal Express a letter from Shaviv dated July 9, 2014. In it, Shaviv said that Rosen's employment was terminated effective immediately. He wrote that the precipitating event was the letter from the parent that claimed that Rosen's "communication to the daughter (extended via the parent) was 'upsetting . . . detrimental . . . absurd . . . cruel.'" Shaviv could see Rosen's entire email and see that it was none of the things the parent claimed.

33.    At the time of Rosen's firing, there was no one older than her teaching at the Upper School. She was the oldest teacher in the Upper School by at least seven years. There were a few teachers in their early sixties.

### FIRST CAUSE OF ACTION

#### Age Discrimination Under the ADEA

34.    Plaintiff repeats and re-alleges paragraphs 1-33 above.

35.    By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her age in violation of the ADEA.

36.    Defendant knew that its actions constituted unlawful discrimination and/or acted with malice or reckless disregard for plaintiff's statutorily protected rights. These violations were willful within the meaning of the ADEA.

37.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

7

760377 v1

## SECOND CAUSE OF ACTION

### Age Discrimination Under the Executive Law

38.    Plaintiff repeats and re-alleges paragraphs 1-37 above.

39.    By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her age in violation of the Executive Law.

40.    Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of defendant's discriminatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION

### Age Discrimination Under the City Law

41.    Plaintiff repeats and re-alleges paragraphs 1-40 above.

42.    By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her age in violation of the City Law.

43.    Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of defendant's discriminatory practices unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION

### Retaliation Under the ADEA

44.    Plaintiff repeats and re-alleges paragraphs 1-43 above.

760377 v1

45. By the acts and practices described above, defendant retaliated against plaintiff for her opposition to unlawful discrimination in violation of the ADEA.

46. Defendant knew that its actions constituted unlawful retaliation and/or acted with malice or reckless disregard for plaintiff's statutorily protected rights. These violations were willful within the meaning of the ADEA.

47. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's retaliatory practices unless and until this Court grants relief.

## FIFTH CAUSE OF ACTION

### Executive Law – Retaliation

48. Plaintiff repeats and re-alleges paragraphs 1-47 above.

49. By the acts and practices described above, defendant retaliated against plaintiff for her opposition to unlawful discrimination, in violation of the Executive Law.

50. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of defendant's discriminatory practices unless and until this Court grants relief

## SIXTH CAUSE OF ACTION

### City Law – Retaliation

51. Plaintiff repeats and re-alleges paragraphs 1-50 above.

52. By the acts and practices described above, defendant retaliated against plaintiff for her opposition to unlawful discrimination, in violation of the City Law.

760377 v1

53.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to her reputation as a result of defendant's discriminatory practices unless and until this Court grants relief

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a Judgment:

(a)     Declaring that defendant's conduct complained of herein violates plaintiff's rights under the ADEA, the Executive Law and the City Law;

(b)     Enjoining and permanently restraining defendant from violating the ADEA, the Executive Law and the City Law;

(c)     Directing defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)     Directing defendant to reinstate plaintiff in the position she would have occupied but for defendant's discriminatory and retaliatory conduct and making her whole for all earnings and other benefits she would have received but for defendant's discriminatory and retaliatory treatment, including, but not limited to, wages and other lost benefits;

(e)     Directing defendant to pay plaintiff compensatory damages for her mental anguish, humiliation, and damage to her reputation;

(f)     Directing defendant to pay plaintiff punitive damages;

(g)     Directing defendant to pay liquidated damages;

(h)     Directing defendant to pay reasonable attorneys' fees and costs;

(i)     Directing defendant to compensate plaintiff for any adverse tax consequences;

10

760377 v1

(j)    Directing defendant to pay prejudgment interest; and

(k)    Granting such other and further relief as this Court deems necessary and proper.

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
       June 28, 2016

VLADECK, RASKIN & CLARK, P.C.

By:                             

Anne L. Clark
Attorneys for Plaintiff
565 Fifth Avenue, 9th Floor
New York, New York  10017
(212) 403-7300

11

760377 v1